**UNITED STATES DISTRICT COURT**

**WESTERN DISTRICT OF LOUISIANA**

**LAFAYETTE-OPELOUSAS DIVISION**

| | | |
|---|---|---|
| **KENWARD J. COKER** | * | **CIVIL ACTION NO. 06-0093** |
| **VERSUS** | * | **JUDGE DOHERTY** |
| **COMMISSIONER OF SOCIAL SECURITY** | * | **MAGISTRATE JUDGE HILL** |

## REPORT AND RECOMMENDATION

This social security appeal was referred to me for review, Report and Recommendation pursuant to this Court's Standing Order of July 8, 1993. Kenward J. Coker, born January 1, 1945, filed an application for disability insurance benefits on February 6, 2004, alleging disability as of June 15, 1999, due to back, neck, shoulder, and knee pain, carpal tunnel syndrome, high blood pressure, post-traumatic stress disorder, and chronic depression.[1]

FINDINGS AND CONCLUSIONS

After a review of the entire administrative record and the briefs filed by the parties, and pursuant to 42 U.S.C. § 405(g), I find that there is substantial evidence in the record to support the Commissioner's decision of non-disability and that the

---

[1] The ALJ incorrectly listed claimant's date last insured as June 30, 1999. (Tr. 16). The correct date is June 30, 2001. (Tr. 41, 290). Thus, claimant must prove that he became disabled prior to June 30, 2001.

Commissioner's decision comports with all relevant legal standards. *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992).

In fulfillment of F.R.Civ.P. 52, I find that the Commissioner's findings and conclusions are supported by substantial evidence, which can be outlined as follows:

**(1) Records from VA Medical Center dated April 9, 1999 to April 21, 2003**. In 1999, claimant complained of pain in both arms, wrists, knees, and low back, hypertension, and myopia. (Tr. 120-22). He had a history of carpal tunnel syndrome. (Tr. 121). He was fitted with a back corset and wrap knee braces, and was prescribed Morphine. (Tr. 121-22). Dr. Soon Gum Kim reported that his pain was well-controlled with the pain medication regimen. (Tr. 118, 121).

In 2000, claimant was seen for chronic low back and knee pain, hypertension, elevated cholesterol, obesity, carpal tunnel syndrome, presbyopia, and depression. (Tr. 102-120). In May, 2000, his drug screen was positive for THC. (Tr. 88, 108). Dr. Kim stated that she was not going to prescribe morphine for claimant anymore since he was using marijuana. Claimant was also instructed to lose weight. (Tr. 102).

On February 6, 2001, claimant complained that his distance vision was blurry. (Tr.100). His vision without glass was 20/20 OD and 20/25 OS. The diagnoses were cataract, presbyopia, and myopia. (Tr. 101).

On March 19, 2001, claimant complained of nightmares, flashbacks, and startle response related to his military time. (Tr. 100). He also stated that he had concerns about a chemical that he was exposed to in Vietnam. No further social work intervention was indicated, and the case was closed.

On April 30, 2001, claimant complained of chronic, severe pain in his shoulders, lower back, hands, and knees, and depression. (Tr. 98). He was demanding morphine. (Tr. 97). He was counseled regarding diet, exercise, weight control, and pain management. (Tr. 98).

On February 25, 2002, it was reported that claimant's lumbar spinal stenosis and osteoarthritis had resolved. (Tr. 81-82). Claimant's carpal tunnel syndrome had resolved as of September 4, 2002. (Tr. 79, 83). He was assessed with cannabis abuse – continuous use, dysthymia, and generalized anxiety disorder on April 21, 2003. (Tr. 79-80).

**(2) Psychiatric Review Technique Form dated March 4, 2004**. R. H. Rolston, Ph.D., found that claimant had no medically determinable mental impairment prior to June 30, 2001. (Tr. 124). He noted that between June 15, 1999 and June 30, 2001, claimant had attended the VA Medical Center, where he had diagnoses of depression, marijuana use, and seeking of pain killers. (Tr. 136). He determined that there was not information to show that he suffered from a disabling condition during

3

this period.

**(3) Records from Armstrong Medical Clinic dated January 5, 1996 to March 27, 2002**. During this time, claimant complained of chronic lower back, shoulder, knee, and hand pain, carpal tunnel syndrome, and hypertension. (Tr. 138-214). A right knee x-ray showed calcification in the joint space with no narrowing or arthritic changes. (Tr. 199). Shoulder x-rays demonstrated mild arthritis in both AC joints. Claimant's diagnoses included hypertension, cervalgia, lumbar disc disease, shoulder pain, knee pain, chondrocalcinosis with pseudogout, a right knee medial meniscus tear, right ulnar entrapment, sciatica, and glucose intolerance. (Tr. 140). He was prescribed physical therapy, and medications including Lorcet, Soma, Xanax, Valium, and Amytriptyline. (Tr. 138-214).

**(4) Records from Veteran's Administration Medical Center Lafayette Clinic dated April 8, 2003 to June 23, 2005**.[2] Claimant had surgery for follicular adenoma of the right thyroid on March 31, 2003. (Tr. 287). He was healing well.

On April 21, 2003, claimant underwent a psychiatric evaluation. (Tr. 283). He thought that he had post-traumatic stress disorder. He reported that he had drunk a case of beer and smoked marijuana the previous day. (Tr. 284). Dr. William

---

[2]These records related to the period after claimant's date last insured. Evidence showing the degeneration of his condition after that date is not relevant. *Torres v. Shalala*, 48 F.3d 887, 894 (5th Cir. 1995).

4

Clayton's assessment was dysthymia, generalized anxiety disorder, rule out thought disorder, doubtful PTSD, and marijuana abuse. (Tr. 281-82). He instructed claimant to avoid more than two alcoholic beverages a day, avoid all marijuana, and cut down to two caffeinated drinks a day. (Tr. 282).

On April 24, 2003, claimant was seen during the pain management committee meeting. (Tr. 279-80). He stated that he was getting off of marijuana and did not use alcohol often. (Tr. 280). He complained of constant, deep back pain which decreased with medications, and numbness in the hands and feet. On examination, he had mild tenderness in the lumbar area, negative straight leg raises, limited range of motion in the back, 5/5 muscle strength, and intact sensation. He ambulated with a cane. The assessment was chronic back pain.

At a psychological evaluation dated August 27, 2003, David C. Daniel, Jr., Ph.D., reported that claimant's answers to questions on the PAI indicated that he had exaggerated his difficulties to the point that it was difficult to interpret the results. (Tr. 277). He noted that claimant's profile was consistent with a "fake bad" profile. He appeared to have symptoms of post-traumatic stress disorder, along with difficulties with depression and substance abuse. The assessment was depressive disorder, NOS; mixed substance abuse – alcohol and marijuana; post-traumatic stress disorder, chronic, tentative diagnosis; some schizoid and borderline traits, chronic

5

pain difficulties, and moderate current stressors. (Tr. 277-78). His Global Assessment of Functioning (GAF) score was 60. (Tr. 278). Dr. Daniel suggested that claimant continue with psychiatric treatment, which claimant was unsure about.

Claimant requested prescriptions for pain medications by phone on several occasions. (Tr. 234, 245, 254-56, 265-66). It was noted on December 29, 2003, that claimant was dependent on pain medication for relief. (Tr. 264).

On January 26, 2004, claimant complained that he was having trouble with pain and had lost his desire to eat since he had been off of marijuana. (Tr. 261). He had hyperglycemia and high lipids. He was 71 inches tall and weighed 235 pounds. His pain level was 4, which was acceptable to him. Dr. Ernest Kinchen, Jr. instructed him to keep all appointments and adhere to his diet. (Tr. 262).

At a followup psychiatric examination on February 4, 2004, claimant reported that he had had several altercations with people who had come onto his property and cut some of his trees. (Tr. 260). He stated that he had had a couple of sips of whiskey since the holidays and had occasionally used marijuana. He tolerated his medications well, but reported some decrease in sex drive. Dr. Clayton questioned whether claimant was using sertraline regularly, and if he was using alprazolam, beer, and marijuana mainly to control mood. He discouraged drug and alcohol abuse and increased the sertraline.

6

On September 27, 2004, claimant stated that he had been using the sertraline mixed with St. John's Wort, and thought that it helped. (Tr. 239). The assessment was that claimant was stable and improved. Dr. Clayton increased claimant's dosage of sertraline. (Tr. 240).

On December 3, 2004, social worker Robin Chapman reported that claimant was upset about not receiving his medications and had made a threat about getting a gun. (Tr. 233). He was provided with counseling and given a local contact for a counselor. (Tr. 233-34).

On April 5, 2005, claimant reported that he was about the same. (Tr. 223). Dr. Clayton tapered off the sertraline and added a trial of bupropion. He referred claimant for psychological care, but claimant failed to show up for his visit. (Tr. 218).

Claimant continued to complain of chronic shoulder, back, and left knee pain. (Tr. 215-18). He reported that it decreased with pain medication. (Tr. 216, 218).

At the last recorded visit on June 23, 2005, claimant complained of pain in his lower back, shoulders, knees, and index fingers. (Tr. 215). He rated his pain as a 6. He stated that his pain increased with physical activity and decreased with pain medications and rest.

**(5) Claimant's Administrative Hearing Testimony**. At the hearing on August 22, 2005, claimant testified that he had last worked as a truck driver in June of 1999. (Tr. 291). He stated that he had stopped working because he could not get along with his coworkers and the public due to anxiety and pain. (Tr. 292-93).

Claimant stated that he was getting all of his medical treatment through the VA. (Tr. 293). He testified that in June of 2001, he usually took his medications, soaked in a hot tub of water and watched cartoons on television for an hour to two hours, then walked around the house and watched television. (Tr. 294).

Regarding restrictions, claimant testified that he could sit for about 10 minutes. (Tr. 295). He stated that he used a cane for walking, and could walk about 15 to 20 paces. He reported that he could lift about 10 or 15 pounds. He said that his son helped him with personal needs, such as dressing. (Tr. 297).

Claimant stated that he was taking several medications, including Percocet, Xanax, Zoloft, arthritis pain medicine, high blood pressure pills, and muscle relaxers. (Tr. 296, 299-300). He reported that he had side effects, including causing him to do things he was not supposed to do, concentration problems, and nausea. (Tr. 296, 300). Additionally, he testified that the painkillers made him sleepy and sweaty. (Tr. 297).

As to complaints, claimant reported that he had been diagnosed with post-traumatic stress disorder. He stated that he did not go around crowds, and did not go out much. (Tr. 298). Additionally, he said that he wore wrist braces for carpal tunnel syndrome and a knee brace for a torn meniscus in his right knee. He also complained of constant back pain. (Tr. 299).

**(6) The ALJ's Findings are Entitled to Deference**. Claimant argues that: (1) the ALJ erred in failing to find that he was disabled and entitled to benefits; (2) alternatively, the ALJ erred in failing to find that he was entitled to a closed period of benefits, and (3) the ALJ erred in finding that his testimony and complaints of pain were not credible.

As to the first two arguments, claimant asserts that he suffers from chronic physical and mental problems which render him totally disabled as of June 15, 1999, and that his condition has deteriorated since that time. (rec. doc. 8, p. 7). At the outset, the undersigned notes that claimant's date last insured is June 30, 2001; thus, he must prove that he became disabled prior to the expiration of his insured status. *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992).

In this case, the ALJ found that claimant had severe impairments of chondrocalcinosis of the right knee, mild arthritis in the shoulder joints, chronic back pain, disc disease, neck pain, cervalgia, hypertension, degenerative disease of the

knee, bilateral carpal tunnel syndrome, cannabis and alcohol abuse, depression, and post-traumatic stress disorder, but that they were not severe enough to meet or medically equal, either singly or in combination, one of the impairments in the Social Security listings. (Tr. 13). The records prior to June 30, 2001 support this finding.

Specifically, claimant's treating physician, Dr. Kim, noted that claimant's pain seemed to be well controlled by his pain medication regimen, and claimant also reported that his pain decreased with medication. (Tr. 118, 121, 216, 218). If an impairment reasonably can be remedied or controlled by medication, treatment or therapy, it cannot serve as a basis for a finding of disability. *Johnson v. Bowen*, 864 F.2d 340, 348 (5th Cir. 1988); *Lovelace v. Bowen*, 813 F.2d 55, 59 (5th Cir. 1987). Additionally, the VA's records show that claimant's impairments of osteoarthritis, lumbar spinal stenosis, and carpal tunnel syndrome had resolved as of 2002. (Tr. 81-83). Further, none of claimant's physicians had indicated that his impairments were disabling. (Tr. 77-123). *See Vaughan v. Shalala*, 58 F.3d 129, 131 (5th Cir. 1995) (substantial evidence supported ALJ's finding that claimant could perform a wide range of sedentary work where no physician who examined her pronounced her disabled). As the ALJ's findings as to claimant's physical impairments are supported by the medical evidence, they are entitled to deference.

Regarding claimant's mental impairments, the ALJ observed that although claimant asserted that he was depressed, he sought no mental health treatment, but instead wanted to self-medicate with marijuana. (Tr. 14). This was confirmed by Dr. Clayton, who questioned whether claimant was using his sertraline regularly, and wondered if claimant was using alprozolam, beer, and marijuana to control his mood. (Tr. 260). Despite Dr. Clayton's repeated instructions to avoid drugs, claimant continued to use alcohol and marijuana. (Tr. 239-40, 259-60, 284-85). It is well established that failure to follow prescribed medical treatment precludes an award of benefits. 20 C.F.R. § 416.930(a), (b); *Johnson v. Sullivan*, 894 F.2d 683, 685, n. 4 (5th Cir. 1990). Additionally, the state agency psychologist, Dr. Rolston, found insufficient evidence of any medically determinable mental impairment prior to June 30, 2001. (Tr. 124-137). Thus, the ALJ's findings as to claimant's mental impairments are entitled to deference.

Claimant also asserts that he takes medications with numerous side effects which render him unable to work. (rec. doc. 8, p. 7). However, the medical records do not indicate that claimant complained of any side effects to his physicians. *See Marlow v. Barnhart,* 161 Fed.Appx. 346, 348 (5th Cir. 2005) (plaintiff failed to produce objective medical evidence to support his subjective complaints regarding the side effects of his treatment); *Maharajh v. Barnhart*, 424 F.Supp.2d 915, 934

(S.D. Tex. 2006) (no evidence in the record that plaintiff complained about drowsy side effects of his medication to treating physicians). In fact, he denied any problems with his medicines. (Tr. 258). Thus, this argument lacks merit.

Next, claimant argues that the ALJ erred in finding that his testimony was not credible. (rec. doc. 8, pp. 10-11). The ALJ found that claimant's allegations as to his impairments and limitations were not entirely credible. (Tr. 15). Specifically, he noted that claimant's complaints as to his wrists and knees were not supported by the medical evidence. (Tr. 15).

To prove disability resulting from pain, an individual must establish a medically determinable impairment that is capable of producing pain. *Ripley v. Chater*, 67 F.3d 552, 556 (5th Cir. 1995). Once a medical impairment is established, the subjective complaints of pain must be considered along with the medical evidence in determining the individual's work capacity. *Id*. Disabling pain must be constant, unremitting, wholly unresponsive to therapeutic treatment, and corroborated in part by objective medical testimony. *Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001); *Wren v. Sullivan*, 925 F.2d 123, 128 (5th Cir. 1991).

In this case, the record shows that many of claimant's impairments, including his osteoarthritis, lumbar spinal stenosis, and carpal tunnel syndrome, had resolved

as of 2002. (Tr. 81-83). Additionally, right knee x-rays showed calcification in the joint space with no narrowing or arthritic changes, while shoulder x-rays demonstrated mild arthritis in both AC joints. (Tr. 199). This evidence does not show conditions capable of causing disabling pain. Thus, the ALJ's finding as to credibility is entitled to great deference. *Newton v. Apfel*, 209 F.3d 448, 458 (5th Cir. 2000).

Additionally, claimant argues that the ALJ gave more weight to the opinions of the non-treating physicians than to his treating physicians. (rec. doc. 8, p. 11). However, the record reflects that the ALJ based his opinion on the records of claimant's treating physicians, as well as the consultative examiner. (Tr. 13-15). Accordingly, the ALJ's opinion is entitled to deference.

Further, claimant argues that there has been no determination that he could hold whatever job he found for a significant period of time, citing *Singletary v. Bowen*, 798 F.2d 818 (5th Cir. 1986). (rec. doc. 8, pp. 8-9). However, since the issuance of its decision in *Watson v. Barnhart*, 288 F.3d 212 (5th Cir. 2002), the Fifth Circuit has determined that the Commissioner is not required to make a specific finding regarding the claimant's ability to maintain employment in every case. *Dunbar v. Barnhart*, 330 F.3d 670, 672 (5th Cir. 2003); *Frank*, 326 F.3d at 618. As the court stated in *Frank*:

> *Watson* requires a situation in which, by its nature, the claimant's physical ailment waxes and wanes in its manifestation of disabling symptoms. For example, if [plaintiff] had alleged that her degenerative disc disease prevented her from maintaining employment because every number of weeks she lost movement in her legs, this would be relevant to the disability determination. **At bottom, Watson holds that in order to support a finding of disability, the claimant's intermittently recurring symptoms must be of sufficient frequency or severity to prevent the claimant from holding a job for a significant period of time**. An ALJ may explore this factual predicate in connection with the claimant's physical diagnosis as well as in the ability-to-work determination. Usually, the issue of whether the claimant can maintain employment for a significant period of time will be subsumed in the analysis regarding the claimant's ability to obtain employment. Nevertheless, an occasion may arise, as in Watson, where the medical impairment, and the symptoms thereof, is of such a nature that separate consideration of whether the claimant is capable of maintaining employment is required.

(emphasis added). *Id*. at 619.

Here, claimant has not demonstrated that his symptoms were of sufficient frequency or severity to prevent him from holding a job for a significant period of time as required by *Watson*. The ALJ's opinion that he was able to perform his past work is supported by the evidence.[3] Thus, his finding is entitled to deference.

Based on the foregoing, it is my recommendation that the Commissioner's decision be **AFFIRMED** and that this action be **DISMISSED** with prejudice.

---

[3]Claimant also argues that the ALJ erred by not obtaining testimony from a vocational expert. (rec. doc. 8, p. 10). However, vocational expert testimony is not required to find that a claimant can perform his past relevant work. *Harper v. Sullivan*, 887 F.2d 92, 97 (5th Cir. 1989).

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and F.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within ten (10) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FACTUAL FINDINGS AND/OR THE PROPOSED LEGAL CONCLUSIONS REFLECTED IN THIS REPORT AND RECOMMENDATION WITHIN TEN (10) DAYS FOLLOWING THE DATE OF ITS SERVICE, OR WITHIN THE TIME FRAME AUTHORIZED BY FED.R.CIV.P. 6(b), SHALL BAR AN AGGRIEVED PARTY FROM ATTACKING THE FACTUAL FINDINGS OR THE LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT COURT, EXCEPT UPON GROUNDS OF PLAIN ERROR.** *DOUGLASS V. UNITED SERVICES AUTOMOBILE ASSOCIATION*, **79 F.3D 1415 (5TH CIR. 1996).**

Signed this ___ day of October, 2006, at Lafayette, Louisiana.

_____
C. MICHAEL HILL
UNITED STATES MAGISTRATE JUDGE